J-S31031-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| M.D.S. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| N.M.S. N/K/A N.M.M. | |
| Appellant | No. 57 MDA 2015 |

Appeal from the Order Entered on December 5, 2014
In the Court of Common Pleas of York County
Civil Division at No.: 2004-FC-001517-03

BEFORE:  BENDER, P.J.E., ALLEN, J., and WECHT, J.

MEMORANDUM BY WECHT, J.:                    **FILED MAY 22, 2015**

N.M.S. ("Mother") appeals the December 5, 2014 order that awarded primary physical custody to Mother and partial physical custody to M.D.S. ("Father") and shared legal custody.  We affirm.

Mother and Father have two minor children: K.S., born in 1999, and C.S., born in 2001.  The parties divorced in 2004.  On December 8, 2006, the trial court entered a stipulated custody order in which Mother had primary custody and Father had three weekends each month in addition to custody for two hours every Thursday.  During the summer, the parties shared physical custody pursuant to a week on/week off schedule.

On August 28, 2013, Mother filed a petition to modify custody.  Mother also sought a contempt finding against Husband for his alleged failure to abide by the custody order.  On March 17, 2014, the parties entered into a stipulated custody agreement.  In the agreement, Father had custody for

two consecutive weekends out of every three weekends, every Sunday through Monday when there was a Monday school holiday, and every Thursday night for two-and-a-half hours. The summer schedule remained week on/week off. Mother had right of first refusal for anytime that Father would be unavailable for more than four hours during his periods of custody. The agreement also included a provision that the children would only have one cell phone which was to be provided by Mother.

On August 18, 2014, Mother filed another petition for contempt and to modify custody. Mother alleged that Father did not offer Mother the opportunity to care for the children when Father was unavailable, that Father discussed custody issues with the children, that Father did not take the children to their extracurricular activities, that Father did not give the children medication as prescribed, and that Father provided the children with cell phones. Mother sought additional periods of custody during the summer. On September 3, 2014, Father filed a counter-petition to modify custody in which he sought primary custody of the children.

Before trial, the parties stipulated to the following facts: K.S. was fourteen years old and about to turn fifteen. C.S. was thirteen years old. Father was unmarried. Mother was remarried and was an at-home parent. Further, Mother had six children in addition to the two involved in this custody litigation: an eighteen-year-old from a prior relationship and five children aged six and younger from her current marriage. Both parents have extended family in the area.

On December 4, 2014, the trial court held the custody trial, at which the following evidence was produced: Mother testified that she believed that Husband was not following the stipulated agreement. Notes of Testimony ("N.T."), 12/4/2014, at 66. Father did not bring the children to Mother's house on weekdays during the summer when he was working. Mother was concerned that the children would be unsupervised while Father was working. *Id.* at 85. When Mother inquired about his work schedule, Father told Mother that the children were fine and were not alone for more than four hours. *Id.* at 66-67. Mother testified that Father was not taking C.S. to violin lessons, not transporting the children, and not abiding by the one-cell-phone rule. *Id.* at 69, 71-72. Mother admitted that she sometimes leaves C.S. alone or leaves both children alone at her house, including for three hours on Sundays when the rest of family is at church. *Id.* at 91-92.

Mother testified that Father has not taken the children to doctor or dentist appointments. Father does not attend parent-teacher conferences or school events. *Id.* at 72. Mother only communicates with Father by email or text. *Id.* at 74. Mother testified that Father tries to involve the children in custody decisions, suggesting that she text the children to see what they want in terms of modifications to the schedule, rather than Father making a decision. *Id.* at 76. Mother said that Father refused to take K.S. to get shoes for a concert. *Id.* at 80. Mother also testified that Father allowed K.S. to attend homecoming without informing Mother. *Id.* at 80-81.

Mother has the children practice violin every night while in her custody. *Id.* at 78. Mother testified that Father did not want the children to practice at his house because he did not like the sound of violins. *Id.* at 78. Both children get good grades, although C.S.'s grades were effected slightly by his ADHD. *Id.* at 79. Mother requires that the children do chores before they earn access to their cell phones, cell phones and other electronics are collected before bedtime, and she regularly checks their cell phones and other devices. *Id.* at 81-82. However, Mother testified that the children have brought Father's cell phones to her house against her wishes and hidden the phones from her. *Id.* at 82. Mother also testified that she only wanted age-appropriate things on the children's phones. The children would not give Mother the passwords to Father's cell phones to permit her to monitor those phones. *Id.* at 90.

Father testified that he resides in the same school district as Mother. *Id.* at 97. He has lived in his current residence since 2007 and both children have their own bedrooms. *Id.* at 95-97. Father admitted that he was stopped at a DUI checkpoint in November 2013 and had entered and completed an ARD program. The children were not in his custody at the time of the stop. *Id.* at 99. Father stated that he drinks beer occasionally and that he does not use marijuana when the children are in his custody. *Id.* at 100.

Father testified that the children were doing well in school and had no academic issues. *Id.* at 97. The children have no health issues. *Id.* at 102.

The children are happy in his custody. *Id.* at 100. Father has dinner with the children during his weeknight custody. He helps them with homework. *Id.* at 100. During the summer, Father would return home for lunch or during the day when he was working close to home. Father testified that he was in communication with the children during the day and that he did not want to force the children to go to Mother's house when they did not want to go. *Id.* at 103. Father believed that he could give the children more attention than Mother does if he had primary custody. *Id.* at 105.

Father does not believe that C.S. needs medication for ADHD. Father testified that Mother started the medication without his input. *Id.* at 101. C.S. has refused to take the medication. *Id.* at 102. C.S. no longer brings the medication to Father's house. *Id.* at 108. Notably, Father was diagnosed with ADHD and takes medication for it. *Id.* at 108. Father testified that he does not force C.S. to attend violin lessons, but takes C.S. when C.S. wants to go. *Id.* at 109. Father testified that he relies upon the children to get themselves up and ready for events and activities. *Id.* at 110.

K.S. testified that she enjoyed doing things with both parents, but that she did not like how crowded it is at Mother's house or that she had to share a room with her brother, C.S. *Id.* at 11-12. K.S. stated that, at Father's house, they "get off track" and have distractions, like video games and television, that keep them from doing work. *Id.* at 13. She also did not like it when Father asked her to set up veterinarian appointments for their cat.

*Id.* at 18. K.S. testified that she helps with her younger siblings, and that Mother did not allow her to babysit them, but that she watched C.S. at Father's house. *Id.* at 14. K.S. stated that Mother sometimes leaves C.S. home alone because there is not room in the car for all the children, while K.S. must go to help Mother with the younger children. *Id.* at 31-32. K.S. said that, when Father was working during the summer, he would come home during the work day to check on the children. *Id.* at 33.

K.S. said that she practices violin at both houses, but C.S. does not like to practice. *Id.* at 17, 35. K.S. believed that Father was supportive of her involvement in symphony. *Id.* at 35. K.S. admitted that she has two cell phones; one from Mother that she uses at both houses and one from Father that she only uses at his house. *Id.* at 20. Mother does not allow K.S. to use Father's cell phone because Mother does not have the passwords or the ability to access the phone. *Id.* at 33. K.S. admitted that Father expressed his frustrations with the custody order to her. *Id.* at 36.

K.S. testified that she liked having weekends with Father and the week on/week off schedule for the summer. *Id.* at 27. She wanted to spend more time with Father, especially during the school year. *Id.* at 27-28. K.S. also testified that Father came home earlier on days he had custody and had to work. *Id.* at 29. K.S. did not like the idea that Mother would have custody while Father worked. Instead, K.S. wanted to have time with C.S. and did not worry about being home without Father. *Id.* at 31.

C.S. testified that he did not like sharing a room with K.S. at Mother's house. *Id.* at 45. C.S. stated that, at Mother's house, he did not like that the younger children get so much more attention than he and K.S. do. *Id.* at 50. C.S. wanted to spend more time with Father and suggested a week on/week off schedule. *Id.* at 50-51. C.S. stated that he is not worried about being home with his sister while Father is working. He said that, over the summer, Father would come home for lunch on the days that he was working. *Id.* at 53.

C.S. stated that he did not practice his violin at Father's house. *Id.* at 46. C.S. testified that he takes medication for ADHD, but does not take it at Father's house. *Id.* at 47. C.S. did not think the medication made a difference. He tried to speak with his doctor about it, but the doctor only would talk to Mother about the medication and Mother would not tell him what the doctor said. *Id.* at 47-48. C.S. does not like taking the medication. *Id.* at 50. C.S. stated that Mother restricts internet access on his cell phone, but that he could contact his friends. *Id.* at 55. C.S. witnessed both parents get angry about the custody situation and express frustration while he was present. *Id.* at 57-58. C.S. testified that, when Father requested additional custody time, Mother would say no without consulting the children, but that if Mother requested more time, Father would ask the children what they wanted to do. *Id.* at 58-59.

At the end of the trial, the trial court put several findings of fact on the record related to the custody factors that are enumerated in 23 Pa.C.S.A.

- 7 -

§ 5328(a). The trial court found that neither parent prevented contact with the other, but that Mother has refused to provide Father with additional requested custody time. N.T. at 121. Mother performed more of the parental duties. The court recognized that the parents had opposite parenting styles with Mother being "oppressive" while Father was "more lackadaisical." *Id.* at 122; *see id.* at 126 ("Mother is hesitant to give the children any responsibility and [F]ather perhaps gives them too much."). The court found that both parents would provide stability and continuity in family, education, and community life. *Id.* at 122-23. The sibling relationship factor favored Mother, although the court found that the children did not have "a significant bond or spend a significant amount of time" with their siblings. *Id.* at 123. Mother was more likely to attend to the daily needs of the children as she had been responsible for doctor visits, school events, and extracurricular activities. *Id.* at 126-27. Availability of child care favored Mother as she was an at-home parent. However, the court noted that Mother also left the children alone for some periods. *Id.* at 128. The drug and alcohol factor weighed against Father given his DUI; however, the court found that he did not pose a threat of harm to the children and that there was no evidence of any impairment in his ability to parent. *Id.* at 129-30.

The factors of past and present abuse' attempts to turn the children against the other parent, and proximity of residences were not considered to be relevant by the trial court. *Id.* at 121, 125. The court found that

extended family availability; the likeliness of providing a loving, stable and nurturing relationship; the level of conflict between parents; and mental or physical conditions of the parties were neutral factors. *Id.* at 123, 126, 129, 130.

The trial court found that both children expressed an interest in spending more time with Father. The children found Mother's home "a little hectic" and enjoyed the attention and independence that Father offered. *Id.* at 124. The court found that the children's preference was well-reasoned and took that into consideration in its order. *Id.* at 124. Both parents have engaged in inappropriate behavior with regard to the children. The trial court found that Father included the children in custody decisions and disputes and that Mother made comments about Father around the children. *Id.* at 125.

The trial court also considered the catch-all factor in which it weighed the allegations of Father's contempt. *Id.* at 130. The court found that Father was in contempt of the custody order. He had failed to cooperate with Mother and had involved the children in custody issues. He has made disparaging remarks about Mother around the children.[1] Father had not taken the children to all of their extracurricular activities. *Id.* at 131. The trial court found that, although the cell phone provision was added by

---

[1] The trial court concluded that Mother had also violated this provision, but as Father had not filed for contempt, did not make such a finding. N.T. at 131.

Mother's counsel after the parties finished negotiating the order and without Father's approval, Father had the opportunity to review the agreement before signing it, and that Father had agreed to the provision. *Id.* at 132. Father also violated the mutual consultation and right of first refusal provisions. *Id.* at 133.

On December 5, 2014, the trial court entered its custody order. The court awarded Mother primary physical custody. During the school year, Father was to have two consecutive weekends out of every three weekends, three hours every Thursday evening, three hours on the Tuesday after Mother's custody weekend, and Sunday night through Monday night for any Monday school holiday. The summer remained week on/week off custody; however, Father was to provide a weekly work schedule for his custodial periods and Mother would have custody any day that Father worked from 10 a.m. until Father picked the children up after work. The court reiterated that transportation was to be shared, that the parties were to ensure that the children attended extracurricular activities, and that the parties had agreed that Mother was to provide the children with their sole cell phones.

On January 5, 2015, Mother filed a notice of appeal. On the same day, she filed a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). On January 6, 2015, the trial court, finding that Mother was only challenging the court's credibility determinations and the weight of the evidence, adopted its December 4, 2014 recitation of the custody factors and its findings as its Pa.R.A.P. 1925(a) opinion.

Mother raises six issues for our review:

1. Whether the trial court erred when determining 23 Pa.C.S.A § 5328(a)(1) in favor of [Father]?

2. Whether the trial court erred in awarding Father additional periods of custody when it determined that factors (3), (4), (9), (10) of 23 Pa.C.S.A. § 5328(a) [were] in favor of Mother?

3. Whether the trial court erred when it granted Father custody when the trial court determined that Father was unavailable to provide adequate supervision on his scheduled periods of custody?

4. Whether the trial court erred in deciding factor 23 Pa.C.S.A. § 5328(a)(13) leans against both parents and therefore is neutral?

5. Whether the trial court abused its discretion by awarding Father significant periods of custody even though the court found that Father blatantly refuses to give his son prescribed medication?

6. Whether the trial court abused its discretion by not awarding Mother primary custody of the minor children throughout the calendar year because the trial court found that Father willfully violated the mutual consultation provision, disparaging remarks provision, extracurricular activities provision, cell phone provision, and the right of first refusal provision?

Mother's Brief at 8 (citations modified).

Our scope and standard of review of a custody decision are well-settled:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's

deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

***D.K. v. S.P.K.***, 102 A.3d 467, 478 (Pa. Super. 2014) (quoting ***J.R.M. v. J.E.A.***, 33 A.3d 647, 650 (Pa. Super. 2011)).

The court's paramount concern in fashioning a custody determination is the children's best interest. ***Id.*** at 474. To aid in that determination, the General Assembly has set forth the following factors for the trial court to consider:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8)   The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9)   Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10)  Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11)  The proximity of the residences of the parties.

(12)  Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13)  The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another.  A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14)  The history of drug or alcohol abuse of a party or member of a party's household.

(15)  The mental and physical condition of a party or member of a party's household.

(16)  Any other relevant factor.

23 Pa.C.S.A. § 5328(a).   While the statute requires a trial court to give weighted consideration to any factor effecting a child's safety, "[i]t is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case."  **M.J.M. v. M.L.G.**, 63 A.3d 331, 339 (Pa. Super. 2013).

Mother's first and fourth issues assert that the trial court erred in concluding that certain factors weighed in favor of Father or were neutral. Mother asserts that Father is not more likely to encourage contact between

- 13 -

Mother and the children, Mother's Brief at 20-22, and that the level of conflict factor should have favored Mother instead of being neutral. Mother's Brief at 29-30.

The trial court provided its rationale for its conclusions relating to these factors. Specifically, the trial court found that Father was more willing to make modifications to the custody schedule that benefited Mother than Mother was willing to do for Father. N.T. at 121. The trial court also found that the parties do not cooperate and that neither party has attempted to work with the other. The court said, "Again, [M]other imposes her parenting style on [F]ather and instead of responding like an adult, he simply does not respond." *Id.* at 129. Additionally, the court found that both parties had engaged in disparagement of the other within the children's hearing. *Id.* at 125.

The trial court adequately explained its findings on these factors. Further, there is ample support in the record for these findings. There was no error.

Mother's remaining four issues relate to the weight that the trial court gave to the various factors and to Father's contempt. Mother asserts that the trial court found that many factors favored her, yet the trial court still increased Father's custody time. Mother's Brief at 22-25. Essentially, Mother takes issue with the trial court's weighing of the factors. Mother also argues that the trial court granted Father additional time despite its findings that Father did not provide adequate supervision, does not give C.S. his

medication,[2] and violated other provisions of the custody agreement. Mother's Brief at 25-29, 30-32.

We must defer to the weight that the trial court places upon the factors because the trial court viewed the witnesses and heard the evidence first hand. **See D.K.**, *supra*. It is clear that the trial court found the children's testimony compelling and well-reasoned. The trial court found that the children clearly indicated a preference for more time with Father. N.T. at 124-25. Additionally, the trial court considered the children's testimony in weighing the other factors. The trial court also placed a great deal of weight upon Father's contempt. It is clear that Father's contempt was an impediment to a greater change to the custody schedule. **See** N.T. at 121 ("However, we will address later in this [o]pinion the concerns we have with [F]ather's behavior as it relates to the desires of the children."); 125 ("We do note, however, that although the children expressed a desire for a significant increase in time, it is unlikely that that increase will be granted.").

It is also clear that the trial court crafted its order to address Father's contempt and to ensure that the parties complied with the order. Specifically, the court required Father to provide Mother with a weekly work

---

[2] Despite Mother's assertion, the trial court made no finding of contempt or otherwise related to C.S.'s medication either on the record or in its December 5, 2014 order. The December 5 order does not contain any provision that specifically addresses the medication.

schedule during the summer so that Mother could have custody on days when Father worked. Order, 12/5/2014, at 4. Mother was required to pick the children up on those days, which prevented Father from circumventing the order or having to force the children to go to Mother's house. However, Father was responsible for picking the children up from Mother's house. The order required that the children not be involved in communication related to custody matters. *Id.* at 8. Further, the parties must transport the children to all scheduled extracurricular activities, including practices, and if unable to do so, must contact the other parent to allow them to transport the child timely to the event. *Id.* at 8-9. Father was required to cancel his cell phones for the children, but the children were allowed to use their sole cell phones at both houses according to the rules of the parent with custody.[3] *Id.* at 10.

The record provides ample support for the weight that the trial court placed upon the factors and their application to its order. While Father received one additional evening of custody every three weeks, the custody order remained relatively unchanged. The trial court weighed the children's clear preference and testimony against Father's contempt of the prior order. It provided the children with slightly more time with Father while adding

_____

[3] In addition, the trial court found that a monetary penalty was required of Father to deter future contempt. Because Mother did not provide evidence of her counsel fees, the court ordered Father to contribute to one of the children's activities. *Id.* at 16.

provisions to the order to ensure Father's future compliance. The trial court has the discretion "to determine which factors are most salient and critical in each particular case." **M.J.M.**, 63 A.3d at 339. Here, the trial court found that the children's preferences and Father's contempt were the most salient. The record supports this determination. The trial court did not abuse its discretion in so doing.

Order affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/22/2015